UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

RICHARD E. LAND AND SARA L. PORTER
LAND FDBA THIS N THAT TO GO;

Debtor(s).

BANKRUPTCY NO. 19-01485

MOTION FOR RELIEF
FROM AUTOMATIC
STAY

COMES NOW, Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank National

Association, as indenture trustee, for the holders of the CIM Trust 2017-1, Mortgage-Backed Notes,

Series 2017-1 ("Movant") and moves the Court, pursuant to 11 U.S.C. 362 (d) and Bankruptcy Rules

4001 and 9014, to grant relief from Automatic Stay to permit a mortgage foreclosure action in the

Iowa District Court and in support thereof states:

1.      That Movant is a creditor of Richard E. Land and Sara L. Land, and legally entitled to

enforce the note executed by Richard E. Land and Sara L. Land and the mortgage executed by

Richard E. Land and Sara L. Porter-Land, husband and wife, as joint tenants with full rights of

survivorship and not as tenants in common and delivered to American General Financial Services,

Inc., dated May 24, 2008 and filed of record concerning property legally described on said mortgage.

Copies of said note and mortgage are attached hereto as Exhibits A and B, respectively. A copy of the

Assignment to Movant is attached hereto as Exhibit C.

2.      As of September 29, 2021 the Debtor(s) Richard E. Land and Sara L. Land is/are

indebted to Movant in the sum of $137,490.10 unpaid principal balance with interest of 8.49% per

annum from and including December 1, 2020. Debtor(s) monthly payments are currently $1,326.36.

Debtor(s) have not made consistent post-petition payments and payments are due for May 1, 2021

through September 1, 2021. That because of said delinquency, Movant desires to foreclose said

mortgage.

3.      The estimated market value of the subject property is $150,000.00. The basis for such

valuation is Schedule D of the Debtor(s) Petition. A copy of Schedule D is attached hereto as Exhibit D.

4.    Debtor(s) have little or no equity in the subject property.

5.    The mortgaged property is not necessary to an effective reorganization.

6.    Movant does not have, and has not been offered adequate protection for its interest in the mortgaged property.

7.    If Movant is not permitted to foreclose said real estate mortgage on said property, it will suffer irreparable injury, loss and damage.

8.    Carol F. Dunbar has been appointed Trustee in this matter.

**ANY PARTY OPPOSING THIS MOTION MUST TIMELY FILE AND SERVE AN ANSWER AT LEAST SEVEN (7) DAYS PRIOR TO THE DATE SET FOR PRELIMINARY HEARING ON THE MOTION.**

WHEREFORE, Select Portfolio Servicing, Inc., as servicing agent for U.S. Bank National Association, as indenture trustee, for the holders of the CIM Trust 2017-1, Mortgage-Backed Notes, Series 2017-1 moves the Court to grant it Relief from Automatic Stay to permit the foreclosure of its mortgage, permit Movant to offer and provide Debtor(s) with information regarding a potential Forbearance Agreement, short sale, deed in lieu, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such agreement with Debtor(s) without further order of the Court and for such further and other relief as the Court deems just and equitable.

PETOSA LAW LLP

By
Benjamin W. Hopkins          IS#9999346
Ryan C. Holtgraves           IS#6664510
Petosa Law LLP
1350 NW 138th Street, Suite 100
Clive, IA 50325

ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR THE HOLDERS OF THE CIM TRUST 2017-1, MORTGAGE-BACKED NOTES, SERIES 2017-1

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing
Motion for Relief from Automatic Stay was electronically mailed and/or mailed by United
States mail, postage prepaid this on this____day of October, 2021, to the persons listed below.

Jeanie McVay

COPIES TO:

U.S. Bankruptcy Trustee
Northern District of Iowa
111 7th Avenue SE, Box 17
Cedar Rapids, IA 52401-2101

Derek N.W. Hong, Attorney
425 Second Street Southeast
Suite 950
Cedar Rapids, IA 52401

Carol F. Dunbar, Trustee
2616 Orchard Drive, Suite B
Cedar Falls, IA 50613

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT**

**AMERICAN GENERAL**
FINANCIAL SERVICES

| ACCOUNT NUMBER |
|---|

| DATE (MONTH/DAY/YEAR) 05/24/08 | CREDIT LIMIT $ 142517.00 | TYPE OF LOAN (Alpha) |
|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER: |
|---|---|

AMERICAN GENERAL FINANCIAL SERVICES, INC.
5428 BLAIRS FOREST WAY NE
CEDAR RAPIDS, IA 52402-8802

**BORROWER(S) NAME AND ADDRESS ("I", "We")**

RICHARD E LAND
SARA L PORTER
1217 STONEY POINT RD NW
CEDAR RAPIDS, IA 52405

| PROPERTY THAT SECURES THIS LINE OF CREDIT | | |
|---|---|---|
| [X] Conventional Home and Real Estate | [ ] Manufactured Home and Real Estate | [ ] Other Real Estate |
| PROPERTY ADDRESS<br>1217 STONEY POINT RD NW<br>CEDAR RAPIDS, IA 52405 | PROPERTY ADDRESS | PROPERTY ADDRESS |

1. **Meaning of Some Words.** In this Agreement, the words "Borrower," "I," "me," "my," "we," and "our" mean all persons signing this Agreement as a "Borrower" or "Co-Borrower." The words "Lender," "you," and "your" mean AMERICAN GENERAL FINANCIAL SERVICES, INC. Its successors, and assigns.

2. **Home Equity Line of Credit Agreement.** Lender has opened a Line of Credit for me (my "Account"). This American General Home Equity Line of Credit Agreement ("Agreement") states the terms and conditions of my Account. I have read this Agreement carefully and will keep a copy for my records.

3. **Credit Limit.** The maximum amount of credit available to me under this Agreement is called my Credit Limit. My Credit Limit is stated above. The total amount I owe Lender at any time under this Agreement and my Security Instrument (defined in Section 5 below) is called my Total Balance. The total amount available for me to borrow from my Account at any time is called my Available Credit. My Available Credit equals my Credit Limit, less my outstanding Principal Balance. My Principal Balance is the amount I owe Lender for each Draw (defined in Section 7 below) on my Account, as well as any fees and charges that are added to my Principal Balance and any credit insurance premiums.

4. **Promise to Pay.** I promise to pay to the order of Lender my Total Balance. If more than one Borrower signs this Agreement, all of us are bound by this Agreement, and each of us, together and individually, will keep all of the promises we make in this Agreement, including our Promise to Pay. If someone other than a Borrower uses my Account, I promise to pay amounts owed to Lender because of Draws by that person, even if that person did not have my permission and even if I told Lender that the person was using my Account, to the extent permitted by applicable law.

5. **Security Interest.** At the time I sign this Agreement, I also will give Lender a mortgage, deed of trust, and/or other security instrument (the "Security Instrument"). The Security Instrument gives Lender a security interest in the property (the "Security Interest") described at the beginning of this Agreement (the "Property"). Lender's Security Interest will be limited to my Credit Limit plus any unpaid finance charges. The Property will be used as the principal residence of at least one Borrower, unless Lender otherwise agrees. I agree not to allow any other lien to be filed against the Property that will be superior to or adversely affect Lender's Security Interest.

The Security Instrument will not secure other debts I owe Lender, unless it specifically states that it secures those debts. This Agreement and my Account will not be secured by a mortgage, deed of trust, or other security instrument on anyone's principal residence, unless the mortgage, deed of trust, or other security agreement specifically states that it secures this Agreement.

6. **Using My Account.**

**Right to Cancel.** If the Property is the principal residence of any Borrower, I may be entitled to cancel all or a part of this Agreement under the Truth in Lending Act and Regulation Z or other applicable law. If Lender gives me a Right to Cancel, I may not use my Account until the Right to Cancel expires. I may also be entitled to rescind a Security Interest added or increased in the event that the Credit Limit on my Account is increased.

**The Term of This Agreement.** The term of this Agreement is divided into two periods: the 10 year "Draw Period" and the "Repayment Period." The Repayment Period will vary depending on the payment option I choose.

**Draw Period.** An advance of funds from my Account is called a Draw. This Agreement and the Draw Period begin on 05/26/08 . The Draw Period will continue for 10 years and will end on 05/23/18 (the "Last Draw Date").

**Repayment Period.** After the Draw Period ends, the Repayment Period begins ("Repayment Period"). During the Repayment Period, I may not take any Draws, and I must repay the Total Balance in accordance with the payment option I choose.

**Credit Limit.** I may make Draws on my Account up to my Credit Limit; however, I may not take a Draw greater than my Available Credit. If I do request a Draw greater than my Available Credit in violation of this Agreement, Lender may but is not obligated to honor that Draw request, and Lender is not obligated to honor future Draw requests in excess of my Credit Limit.

7. **Draws.** There are two kinds of Draws: the "First Draw" and "Subsequent Draws."

**First Draw.** I must take a First Draw in the minimum amount of $ 1000.00 on 05/26/08 (the "First Draw Date"). My First Draw will be paid to me by check. In addition to my First Draw, any Fees due under this Agreement that I choose to finance will be added to my Principal Balance.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

HELOC Agreement (1-2)    Page 1    Borrower's Initials

EXHIBIT
A

## AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

**Subsequent Draws.** I may take Subsequent Draws during the Draw Period by writing special checks from time to time (each, a "Check"), but I may not request a Subsequent Draw for an amount greater than my Available Credit. Each Subsequent Draw must be for at least $___100.00___. Immediately after any Subsequent Draw, my Principal Balance must exceed $_N/A_'_____. I may obtain Subsequent Draws at Lender's offices or by using my Checks I receive from Lender. I must sign any Check I use to take a Subsequent Draw. Lender may charge amounts to my Account as Subsequent Draws to protect Lender's Security Interest in the Property, as stated in the Security Instrument, at any time.

**Checks.** I can use my Checks, subject to the terms of this Agreement. When Lender honors a Check, Lender may charge the amount of the Check to my Account, even if it is post-dated, stale, or will cause me to exceed my Credit Limit. Lender is not obligated to pay Checks that will cause me to exceed my Credit Limit, but, if Lender does so, Lender is not obligated to do so again in the future. Checks will not be returned with my Monthly Statements. Lender can pay Checks in any order it chooses even though this may affect whether I exceed my Credit Limit, unless otherwise required by law.

**Stop Payment Requests.** If I ask, Lender may attempt to stop payment on a Check, but Lender will have no liability to me if Lender does not. An oral request to stop payment is good for only fourteen (14) calendar days unless I confirm it in writing within that period. A written request is good for only six (6) months unless I renew it in writing within that period. I will contact Lender immediately if I wish to stop payment on a Check. Lender then will send me a "Stop Payment Request" form that I must sign and return to Lender. Lender will advise me of other rules that will apply to Stop Payment Requests.

**Loss of Checks.** I must notify Lender immediately if any of my Checks are lost or stolen or if I learn that any of the Checks have been used without my permission. To report the loss or theft of my Checks, I may write to Lender at the address listed at the beginning of this Agreement or on my Monthly Statement ("Lender's Address") or call Lender at the telephone number listed at the beginning of this Agreement or on my Monthly Statement ("Lender's Telephone Number"). Lender may change Lender's Address or Lender's Telephone Number by telling me in my Monthly Statement. If my Account is closed for any reason, I agree to return all unused Checks to Lender immediately.

**Restrictions on Draws.** Lender may refuse to honor any Draw request:

(a) that will cause me to exceed my Credit Limit;

(b) that I try to use to make any payments on my Account or any other account due to Lender, unless I first get Lender's permission in writing;

(c) made by an unsigned Check (such as may occur when using a Check to pay a bill by phone, or in an Automated Clearing House transaction);

(d) that does not comply with this Agreement;

(e) if Lender has suspended or terminated my Account; or

(f) if I am otherwise in default of this Agreement.

Lender is not responsible if I am dissatisfied with the goods or services I have purchased or leased with Draws from my Account or if anyone does not accept my Check.

**8. How My Finance Charges Are Computed.** Finance charges will be assessed on my Account in the form of Additional Fees described in Section 10 below and by applying the applicable daily periodic rate disclosed in Section 9 below to the average daily balance on my Account and then multiplying the resulting product by the number of days in the billing cycle. The Finance Charge calculated in this manner will never exceed the Finance Charge that would result from applying the daily periodic rate to the daily balance for each day of the billing cycle. Finance charges will be disclosed on my Monthly Statement as the Finance Charge. The daily periodic rate applied to my Account will be determined by dividing the annual percentage rate applicable to my Account (the "Annual Percentage Rate") for the billing cycle by 365 (the "Daily Periodic Rate").

**Calculation of Average Daily Balance.** Lender figures a portion of the Finance Charge on my Account by applying the Daily Periodic Rate to the average daily balance on my Account. To get the average daily balance, Lender takes the beginning Principal Balance (which excludes any accrued and unpaid finance charges resulting from the daily periodic rate) on my Account each day, adds any new Draws, Fees (as defined below), and credit insurance premiums (except as otherwise provided in this Agreement), and subtracts any payments or credits. This gives Lender the "Closing Daily Balance" on my Account. Then, Lender adds all the Closing Daily Balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives Lender the "Average Daily Balance." The Closing Daily Balance will reflect payments, credits, draws, and debits posted to my Account each day but will not include any unpaid finance charges resulting from the daily periodic rate.

**No Grace Period.** There is no grace period during which I can make a payment and avoid a Finance Charge. Finance charges will begin to accrue on the day that Draws, Fees (as defined below), or credit insurance premiums are posted to my Account.

**9. Annual Percentage Rates/Daily Periodic Rates.** The interest rate that Lender uses to calculate a portion of the Finance Charge on my Account is called an Annual Percentage Rate or a Daily Periodic Rate. The Annual Percentage Rate is the Daily Periodic Rate of interest on my Account expressed as an annual rate.

[X] **Fixed Annual Percentage Rate/Daily Periodic Rate.** The ANNUAL PERCENTAGE RATE applied to my Account is __8.690__%. The Daily Periodic Rate applied to my Account is ___.0231__%.

[ ] **Variable Annual Percentage Rate/Daily Periodic Rate.** My Annual Percentage Rate and Daily Periodic Rate may change on the _N/A_ annual anniversary of my account, and may change _N/A_ thereafter. The Annual Percentage Rate and the Daily Periodic Rate on my Account are based on an Index. The Index is the highest Prime Rate in the "Money Rates" listing in The Wall Street Journal on the first business day after the 14th day of the month preceding each _N/A_ anniversary of my Account. The anniversary of my Account is _N/A_ from the Date of Agreement above and the same date of each _N/A_ time period thereafter (my "Anniversary"). To get my Annual Percentage Rate, Lender adds _N/A_ percentage point(s) (the "Margin") to the Index. My initial ANNUAL PERCENTAGE RATE is _N/A_ %, and my initial Daily Periodic Rate is _N/A_ %. If the Index becomes unavailable during the term of this Agreement, Lender may use a comparable Index after Lender notifies me. Rate Changes. The Annual Percentage Rate can change _N/A_, but the rate cannot increase or decrease by more than _N/A_ percentage point(s) at any rate change. Changes in the Annual Percentage Rate and Daily Periodic Rate for my Account will take effect on the first day of the billing cycle beginning on or after the Anniversary of my Account. My Monthly Statement will show the new Annual Percentage Rate and Daily Periodic Rate that applied to my Account during the billing cycle. Increases in the Annual Percentage Rate and Daily Periodic Rate for my Account may result in a greater Finance Charge and an increase in the Current Payment I must make on my Account. The ANNUAL PERCENTAGE RATE on my Account will never be more than _N/A_ %, which is the same as a Daily Periodic Rate of _N/A_ %, or be less than _N/A_ %, which is the same as a Daily Periodic Rate of _N/A_ %.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)**

☐ **Introductory Discount for Annual Percentage Rate/Daily Periodic Rate.** Initially, during the discount period, the Annual Percentage Rate and Daily Periodic Rate applicable to my Account will not be the Annual Percentage Rate and Daily Periodic Rate shown above. The Introductory **ANNUAL PERCENTAGE RATE is N/A %, and the Introductory Daily Periodic Rate is N/A %.** The Introductory Annual Percentage Rate and Daily Periodic Rate applicable to my Account will be in effect from the First Draw Date through the first N/A billing cycles. Thereafter, beginning on the first day of the next billing cycle, the Annual Percentage Rate and Daily Periodic Rates shown above will apply.

**Each Annual Percentage Rate disclosed above includes only interest and not other charges.**

**10. Fees.** I agree to pay certain fees and charges ("Fees") as provided below. I agree that Lender may charge these Fees to my Account and include these Fees in my Principal Balance, except as otherwise provided in this Agreement. Fees will not be refunded if my Account is closed for any reason, unless required by law.

**Loan Fees.** I agree to pay the following Loan Fees in connection with my Account. If I do not pay the Loan Fees in cash when I open my Account, funds may be advanced from my Account to pay these Loan Fees at the time I take my First Draw.

    **Loan Fees Paid to Lender.**

    **Loan Fees Paid to Third Parties.**
        $  160.00  Abstract of Title Fee
        $   27.00  Recording/Releasing Fees RE

**Additional Fees.** I also agree to pay the following Additional Fees on my Account. These Fees are an additional kind of FINANCE CHARGE. These Additional Fees will appear on my first Monthly Statement in the "FINANCE CHARGE" box.
    **Additional Fees Paid to Lender.**
        $ 3900.00  Processing Fee

    **Additional Fees Paid to Third Parties.**

**Account Fees.** If checked, Lender may charge the following Fees to my Account:

☐ **Initial Annual Fee.** Lender may charge an Annual Fee on my Account on my first Monthly Statement. The Initial Annual Fee is $ N/A .

☐ **Subsequent Annual Fee.** Lender may charge a subsequent Annual Fee on my Account on each annual anniversary during my Draw Period. The subsequent Annual Fee is $ N/A .

☒ **Late Fee.** I may have to pay a Late Fee as more fully described in Section 34.

☒ **Returned Check Fee.** I may be required to pay a Returned Check Fee as more fully described in Section 35.

☐ **Reconveyance Fee.** I may be required to pay a Reconveyance Fee as more fully described in Section 36.

**11. Payment Options.** Each month I must pay at least the Minimum Payment shown on each of my Monthly Statements by the payment due date. I may make larger payments on my Account at any time and in any amount, but I still must make any Minimum Payment due for the month(s) following that larger payment. The larger my payments, the smaller the total Finance Charge I will have to pay over the term of this Agreement. I may pay the Total Balance on my Account in full at any time; however, I may be required to pay a Prepayment/Termination Fee, as provided in Section 33.

☐ **Percent of New Balance Option.** Under this option and subject to any balloon payment below, my Minimum Payments will be due monthly and will include any Past Due Amounts and any Late Fee and any Returned Check Fees assessed for the billing cycle, plus a Current Payment equal to N/A % of the sum of the Principal Balance, the finance charges, and any credit insurance premiums assessed for the current billing cycle.

☒ **Assumed Term Option.** Under this option and subject to any balloon payment below, my Minimum Payment will be due monthly and will include a Current Payment equal to an amount that would amortize the Principal Balance and the Finance Charge to be earned on my Principal Balance over an assumed term of 30 years (the "Assumed Term") in substantially equal amounts each billing cycle, plus any Past Due Amounts and any Late Fee, and any Returned Check Fees assessed for the billing cycle. During my Draw Period, if my Principal Balance changes because I take a Draw and/or Fees are charged to my Account or if my Annual Percentage Rate changes (other than an adjustment resulting from the expiration of an Introductory Rate), my Current Payment will be adjusted at the end of the billing cycle in which the change occurs to an amount that would amortize my Principal Balance and the Finance Charge to be earned on my Principal Balance in substantially equal amounts each billing cycle over my Assumed Term; however, the due date of any balloon payment below will remain the same. During the Repayment Period, each time my Annual Percentage Rate is adjusted or an advance is made from my Account pursuant to this Agreement, my Current Payment will also be adjusted to an amount that would amortize my Principal Balance and the Finance Charge to be earned over the remainder of my Assumed Term; however, the due date of any balloon payment below will remain the same.
If the Current Payment determined under either payment option above is less than $ 50.00 , my Current Payment will equal $ 50.00 or the New Balance shown on my Monthly Statement, whichever is less.

☐ **Balloon Payment.** If I only make the required Current Payments on my Account, they will not be sufficient to repay my Total Balance. I will then be required to pay my remaining Total Balance in a single "Balloon Payment" on N/A .

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

## AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

**Allocation of Payments.** Account payments will be applied first to any Late Fee, then to any Returned Check Fee, any credit life insurance premiums billed (where applicable), any credit involuntary unemployment insurance premiums billed (where applicable), then to finance charges assessed on my Account, and finally to the Principal Balance of my Account, unless otherwise required by law. Credit insurance premiums are billed as of the Billing Cycle Closing Date as defined in Section 12 below.

**Form of Payments.** I must make my payments by check, money order, or similar instrument payable in U.S. funds and drawn on a financial institution located in the U.S. I may not mail Lender cash or use a Check (see Section 7 above) to pay Lender; however, I may make my payments in cash in person at any of Lender's offices. I agree not to send Lender payments marked "paid in full," "without recourse," or similar language unless those payments are marked for special handling and sent to Lender's office servicing my Account.

**Where to Send My Payments.** I must send my payment to Lender's Address listed on my Monthly Statement. Payments that Lender receives at Lender's Address by 3 PM each business day will be credited to my Account as of the date of receipt. Payments that Lender receives at Lender's Address after this time will be treated as received by Lender on the next business day. Payments received at any other location will be credited no later than five (5) days after Lender receives them to be credited. I will be sure to include my payment coupon with my payment. If I fail to include my payment coupon, my payment may not be credited to my Account for up to five (5) days. Delayed crediting may cause me to incur a Late Fee and/or additional finance charges.

**First Payment Due Date.** If your account has a balance as of the closing date, your first payment due date will be 07/18/08 .
MONTH/DAY/YEAR

**12. Monthly Statements.** Lender will bill me for payments due on my Account, every month, by sending me a billing statement, called a Monthly Statement. The period of time covered by each Monthly Statement is called a "Billing Cycle." My first Billing Cycle begins on the Date of Agreement. The last day of each Billing Cycle is called the "Billing Cycle Closing Date." Each Monthly Statement will show the activity on my Account during the Billing Cycle. The day of the month when each payment will be due is shown after the words "Payment must be received on or before" (the "Payment Due Date"). Each Monthly Statement will show the Billing Cycle Closing Date, the Payment Due Date for the Billing Cycle, and certain other required information. Lender will send each Monthly Statement to the Borrower's address listed at the top of page 1 of this Agreement, called "Borrower's Address."

**When Lender Will Send My Monthly Statements.** Lender will send me a Monthly Statement for each Billing Cycle in which: (1) Lender charges a Finance Charge; (2) Lender charges a Fee; (3) there is any other activity on my Account; or (4) the law requires that Lender send me a Monthly Statement.

**Billing Errors.** I should review each Monthly Statement carefully and advise Lender in writing of any errors within sixty (60) days of the Billing Cycle Closing Date, as more fully explained on the Billing Rights Statement that accompanies this Agreement.

**13. When Lender May Prohibit Subsequent Draws or Reduce My Credit Limit.** To the extent permitted by applicable law and as provided in the Agreement, Lender may prohibit Subsequent Draws or reduce my Credit Limit if:

    (a) The value of the Property decreases significantly below the appraised value of the Property. The appraised value of the Property is the value shown by Lender's most recent appraisal of the Property (the "Appraised Value"); or

    (b) Lender reasonably believes that I will be unable to make my Minimum Payments on time because of a material adverse change in my financial circumstances; or

    (c) I am in default of a material obligation under this Agreement. A material obligation includes, but is not limited to, my promise: (i) to notify Lender immediately should there be an adverse change in my credit or financial condition; (ii) to give Lender updated financial or credit information upon request; (iii) not to permit any lien to be filed against the Property that will be superior to Lender's Security Interest; and (iv) not to exceed my Credit Limit; or

    (d) Government action: (i) prevents Lender from charging any Annual Percentage Rate provided under this Agreement; or (ii) adversely affects the priority of Lender's Security Interest in the Property to the extent that the value of Lender's Security Interest is less than 120% of my Credit Limit; or

    (e) When the maximum Annual Percentage Rate under this Agreement is reached; or

    (f) Lenders' regulators consider Subsequent Draws to be an unsafe and unsound lending practice; or

    (g) I ask Lender to reduce or limit my Subsequent Draws; or

    (h) Any event listed in Section 15 below occurs.

**How to Reinstate My Account.** Lender will reinstate my Account during the Draw Period if: (1) I ask Lender in writing to reinstate; (2) I pay any credit report fees and any appraisal fee Lender incurs to update Lender's credit information about me; (3) Lender agrees that the reason that caused Lender to prohibit Subsequent Draws or reduce the Credit Limit no longer exists; and (4) there is no other reason for Lender to prohibit Subsequent Draws or reduce my Credit Limit. Lender may require that all Borrowers sign any request to reinstate.

**14. Required Property Insurance.** I am required to maintain hazard insurance on the Property in types and amounts acceptable to Lender ("Required Insurance"). I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy to be obtained and paid for by me. I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender. Lender may for reasonable cause decline any insurance provided by me. Required Insurance is not available for purchase through Lender. Required Insurance must: (a) insure the Property against all risks of physical damage, including loss by fire and other hazards for the term of the Agreement; (b) have terms and amounts satisfactory to Lender; (c) name Lender as loss payee or mortgagee; (d) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (e) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee or mortgagee; and (f) not include any disclaimer of the insurer's liability for failure to give such notice. I agree to provide Lender with satisfactory proof of my Required Insurance.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement and the Security Instrument are paid in full, my Account is terminated, and Lender releases or discharges the Security Instrument. In case of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf. I agree that Lender may use any insurance proceeds to reduce the amounts that I owe under this Agreement and the Security Instrument. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement and the Security Instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the Security Instrument.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)**

If, at any time, I fail to buy or keep in force my Required Insurance, Lender may (but is not required to) purchase insurance at my expense to protect Lender's interest in the Property. I agree that Lender may, at its sole option, cancel this insurance and that Lender has a security interest in any unearned premiums from such insurance and I hereby assign to Lender any rights I may have to said unearned premiums and I authorize and appoint Lender as my attorney-in-fact to cancel the insurance and apply the unearned premiums to reduce my Account upon cancellation of said insurance. I agree that this insurance may, but need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of insurance purchased by Lender may be much more than the cost of insurance I could have obtained on my own, and I agree that the cost of such insurance may, to the extent permitted by law, be added to my Principal Balance and accrue finance charges. I authorize Lender to purchase the insurance required by this Agreement. I understand that Lender or its affiliate may earn a profit from the purchase of this insurance, to the extent permitted by applicable law.

**15. Default.** To the extent permitted by applicable law, I will be in default of this Agreement if:

(a) I file for, or my creditors place me in, bankruptcy and I fail to meet the repayment terms of this Agreement; or

(b) I do not make any Minimum Payment by the Payment Due Date or otherwise fail to meet the repayment terms provided for in this Agreement; or

(c) I commit fraud or materially misrepresent any information with regard to my Account, including, but not limited to, material misrepresentations in my credit application, financial statements that I make to Lender, or any correspondence or discussions that I have with Lender about my Account; or

(d) Any action or inaction by me adversely affects Lender's Security Interest in the Property, for example: (i) I transfer title to the Property or sell the Property without Lender's prior written permission; (ii) I do not maintain Required Insurance on the Property; (iii) I do not pay, when due, taxes that would become a lien on the Property; (iv) I am the only Borrower and I die; (v) I do not maintain the Property, I abandon the Property or I commit waste or otherwise destructively use the Property; (vi) a lien that is superior to Lender's Security Interest is filed against the Property, or a lien that is subordinate to Lender's lien is filed against the Property and that lien adversely effects the Property or Lender's rights in the Property; (vii) the Property is taken by condemnation or eminent domain; (viii) the Property is foreclosed upon by another lien holder; (ix) another creditor attempts to enforce a judgment against the Property; (x) I use the Property illegally such that the Property could be seized; or (xi) I move out of the Property; or

(e) One of two Borrowers dies and Lender's Security Interest is adversely affected thereby.

(For Kansas residents only, Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

If I default, Lender may, subject to providing required notices and right to cure: (a) prohibit Subsequent Draws and; (b) reduce my Credit Limit and; (c) close my Account and require me to pay Lender the Total Balance right away and; (d) foreclose on my Property. If I default and Lender hires an attorney who is not Lender's employee to collect my Account, I will pay Lender's collection costs, including court costs and foreclosure costs and reasonable attorney's fees, to the extent permitted by applicable law.

All of Lender's rights and remedies shall be cumulative and nonexclusive with respect to each and every Borrower or Co-Borrower obligated under this Agreement.

**16. When Lender May Close My Account.** If I am in default, Lender may close my Account and require me to pay the Total Balance immediately, after providing me any notice of default and opportunity to cure required by applicable law. If I am in default, Lender first may choose to take other action, such as prohibiting Subsequent Draws or reducing my Credit Limit; however, unless Lender reinstates my Account, Lender does not give up Lender's right to close my Account and require me to pay Lender the Total Balance immediately, even if I do not default again. If Lender closes my Account and requires me to pay Lender the Total Balance right away, I must pay the Total Balance I owe Lender immediately. Until I pay Lender in full, the Principal Balance will continue to accrue finance charges at the rate disclosed in this Agreement, or the maximum rate allowed by applicable law, whichever is less.

**17. Closing My Account.** Except as otherwise provided in this Agreement, I may close my Account at any time by calling Lender at Lender's Telephone Number and sending a written request to Lender's Address. Lender will close my Account when Lender receives my notice. If more than one person signs this Agreement as a Borrower, any Borrower's request to close the Account will be treated as a request to close this Account by all Borrowers. Lender may not honor any Check Lender receives after Lender receives my notice. If I close my Account, I must stop using it immediately and pay the Total Balance I owe Lender. Until I pay Lender in full, Lender will charge finance charges on the Principal Balance of my Account.

**18. Credit Information.** I must notify Lender immediately if there is any adverse change in my credit or financial condition. I will provide Lender with updated financial or credit information when Lender requests it. Lender may get consumer reports from consumer reporting agencies when Lender reviews my Account.

**19. Notices.** Lender will send me any notice required by this Agreement or by law to Borrower's Address. I will tell Lender in writing if Borrower's Address changes. If Lender mails me a letter, notice, or statement to Borrower's Address, Lender can assume that I have received it. If I send Lender a notice or letter, I must send it to Lender's Address or any other address Lender specifies in my Monthly Statement.

**20. Tax Deductions.** Lender has made no promises to me nor advised me in any way whether the Finance Charges and Fees are "interest" that I may deduct on my tax returns. I should consult a tax advisor about deducting Finance Charges and Fees on my tax returns.

**21. No Transfer.** I will not transfer or assign any of my rights under this Agreement. Lender may transfer or assign any or all of Lender's rights under this Agreement.

**22. Telephone Calls.** Lender may listen to or record Lender's telephone calls with me for quality control purposes. Lender may use and I consent to the use of automated telephone equipment or prerecorded telephone calls to contact me about my Account, to the extent allowed by law. If I have a telephone answering device, Lender may leave messages about my Account or about additional opportunities and promotions on this device.

**23. No Waiver.** Lender may choose to delay enforcing any of Lender's rights or waive any of Lender's rights under this Agreement. Lender may delay enforcing or waiving any of Lender's rights without affecting Lender's other rights. If Lender waives a right, Lender can still enforce the same right later.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

HELOC Agreement (5-8)                               Page 5                        Borrower's Initials

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)**

**24. Lender's Errors.** Lender does not intend to charge or collect any interest, charge, or fee that is more than the law allows. If Lender charges or collects any amount over what the law allows, Lender will apply the excess amount first to the Principal Balance due on my Account as a partial prepayment without any Prepayment/Termination Fee. If I have paid my Account in full, Lender will refund any excess amount. If any part of this Agreement is finally determined to be unenforceable under any law, rule, or regulation, all other parts of this Agreement still are valid and enforceable.

**25. How Lender May Change This Agreement.** Subject to any state law requirements, Lender may change the terms of this Agreement if: (a) I have already agreed to the change in this Agreement; (b) I agree to the change in writing at the time Lender requests it; (c) the change unequivocally will benefit me during the remaining term of this Agreement; or (d) the change is insignificant (such as changes relating to Lender's data processing systems).

**26. Entire Agreement.** This Agreement, which includes the Insurance Disclosure Summary, if one was provided to you, contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

**27. Broker Representations.** Borrower acknowledges that any broker involved in the transaction is not Lender's agent, and Lender is not bound by any of the broker's representations.

**28. Release of Security.** Lender is not obligated to release the Security Instrument on the Property unless there are no longer any amounts owing to Lender under this Agreement and unless I indicate to Lender in writing that I want to terminate my Account.

**29. Not applicable.**

**30. Not applicable.**

**31. Miscellaneous.** I waive the defenses of presentment, notice of dishonor, and protest, if any, to the enforcement of this Agreement and any Security Instrument. Time is of the essence of this Agreement. If any provision of this Agreement shall be adjudged or deemed invalid, illegal, or unenforceable, such provision shall be deemed stricken from this Agreement and the remainder of the Agreement shall be construed as if such provision had never been included. Plural words shall be construed in the singular and singular words in the plural as their context may require, or as required to give effect to the terms of the Agreement. I agree to cooperate in executing any extension or statement of maturity of the Security Instrument securing this Agreement.

**32. Arbitration Agreement and Waiver of Jury Trial. (See following pages).**

**33. Voluntary Credit Insurance.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance and I consent to this. The terms "credit insurance" and "credit life insurance" include debtor group life insurance, where offered.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender do not include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are no escrow or impound accounts under my/our Agreement.

I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

## AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)
### ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury, to resolve the dispute. TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter-claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

### ARBITRATION RULES AND PROCEDURES.

**A.    ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B.    SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.    STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D.    COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.    CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

**SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS**

Agreement (7-8)                          Page 7                          Borrower's Initials

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con't)

**F.   ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 8 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G.   LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H.   LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages; and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I.   LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J.   ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K.   FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitrable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405.  (800-474-2371 (Telephone)).  (612-831-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a)  This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b)  The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c)  The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d)  This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e)  If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f)  This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g)  This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

**I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.**

### SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)

**33. Prepayment/Termination Fee.** There will be no prepayment/termination fee.

**34. Late Fee.** If I fail to pay in full the "Current Payment" within __15__ days after its Due Date, Lender may charge a Late Fee of $__15.00__.

**35. Returned Check Fee.** If I make a payment on my Account by a check or other instrument that is returned to Lender unpaid for any reason, Lender may charge and I agree to pay a Returned Check Fee of $__30.00__.

**36. Reconveyance Fee.** Not applicable.

**37. Due on Sale.** If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument; however, this option shall not be exercised if the exercise of this option by Lender is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender will give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by this Security Instrument. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on me.

**38. Governing Law.** The laws of the state where the Property is located and federal law govern this Agreement.

**THIS IS A CONSUMER CREDIT TRANSACTION.**

SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

Borrower's Initials

**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (con't)**

IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.

> BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS
> AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER
> OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I
> ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR
> JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN
> ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED
> PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE
> ARBITRATION AGREEMENT.                                                                LNARBT (8-12-01)

I agree that, as of the date first written above ("the Date of Agreement"), I have received and read a fully completed, legible copy of this
Agreement, the Truth in Lending Insurance Disclosures, a copy of the Security Instrument, the Privacy Notice, and two copies of a Notice of
Right to Cancel (if applicable), and agree to be bound thereby.

X _____    X _____ L.S.
  Witness                            Borrower   RICHARD E. LAND

X _____    X _____ L.S.
  Witness                            Co-Borrower   SARA L PORTER

                                   X _____ L.S.
                                     Co-Maker
                                     Print Name: _____

                                   X _____ L.S.
                                     Co-Maker
                                     Print Name: _____



## NOTE ALLONGE

**THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED
PART OF THE NOTE TO WHICH IT IS ATTACHED.**

| | |
|---|---|
| Borrower 1: | RICHARD E LAND |
| Borrower 2: | SARA L PORTER |
| Date of Loan: | 5/24/2008 |
| Loan Amount: | $142,517.00 |
| Property Address: | 1217 STONEY POINT RD NW |
| City, State, Zip: | CEDAR RAPIDS, IA  52405 |
| Account #: | ▇▇▇▇▇▇▇ |

*Pay to the order of:*

Without recourse

SPRINGLEAF FINANCIAL SERVICES, INC., F/K/A AMERICAN GENERAL
FINANCIAL SERVICES OF AMERICA, INC., AND AMERICAN GENERAL
FINANCIAL SERVICES, INC.

_____
Monte Conrad
Vice President



## NOTE ALLONGE

**THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART
OF THE NOTE TO WHICH IT IS ATTACHED.**

| | |
|---|---|
| Borrower 1: | RICHARD E LAND |
| Borrower 2: | |
| Date of Loan: | 5/24/2008 |
| Loan Amount: | $142,517.00 |
| Property Address: | 1217 STONEY POINT RD NW |
| City, State, Zip: | CEDAR RAPIDS, IA 52405 |

*Pay to the order of:*

Without recourse

SPRINGLEAF FINANCIAL SERVICES, INC. F/K/A AMERICAN GENERAL FINANCIAL
SERVICES, INC.

Stephen L. Day
Vice President

```
Doc ID: 013424170005 Type: GEN
Recorded: 06/27/2008 at 10:36:55 AM
Fee Amt: $27.00 Page 1 of 5
Instr# 2008000037158
Linn County Iowa
JOAN MCCALMANT RECORDER
```
BK**6992** PG357·361

**$37.**

This instrument prepared by: + return to:
JONATHAN CONNER

5428 BLAIRS FOREST WAY NE CEDAR RAPIDS, IA 52402-8802
(name)
(address)                                          (city/state/zip)

(telephone #)

### OPEN-END MORTGAGE

**NOTICE: This mortgage secures credit in the amount of $ 142517.00** Loans and advances up to this amount, together with interest, are senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens.

THIS  OPEN-END  MORTGAGE  ("Security  Instrument")  is  given  on  05/24/08 . The  mortgagor  is RICHARD E. LAND & SARA L. PORTER-LAND,HUSBAND & WIFE,AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON ("Borrower"). This Security         Instrument         is         given         to AMERICAN GENERAL FINANCIAL SERVICES, INC. _____ which is organized and existing under the laws of Delaware, and whose address  is  5428 BLAIRS FOREST WAY NE _____ CEDAR RAPIDS, IA 52402-8802 _____ ("Lender"). Borrower may incur indebtedness to Lender in amounts fluctuating       from       time       to       time       up       to       the       principal       sum of ONE HUNDRED FORTY-TWO THOUSAND FIVE HUNDRED SEVENTEEN DOLLARS AND ZERO CENTS _____ (U.S. $ 142517.00), which amount constitutes the maximum amount of unpaid loan indebtedness, exclusive of interest, thereon, which is secured under this Security Instrument. This debt is evidenced by Borrower's Home Equity Line of Credit Agreement and Disclosure Statement dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable as provided in the Note. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (d) the unpaid balances of loan advances made after this Security Instrument is delivered to the recorder for record. For this purpose, Borrower does hereby mortgage, grant and convey to Lender with mortgage covenants the following described property located in LINN _____ County, Iowa.

SEE ATTACHED EXHIBIT A

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS with the mortgagee and his heirs, assigns, and successors, that Borrower is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances, except encumbrances of record; that Borrower has good right to sell and convey the same; and that Borrower does warrant and will defend the same to Lender and his heirs, assigns, and successors, forever, against the lawful claims and demands of all persons.

Page 1 of 4

┌─────────────────────┐
│      EXHIBIT         │
│                     │
│        B            │
│   _____       │
└─────────────────────┘

IAX251 (03-06-05) HELOC 1st & 2nd Real Estate Mortgage

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** At the request of Lender, Borrower shall begin making monthly payments into an escrow account for the payment of yearly taxes, insurance and other yearly charges imposed upon the Property.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied as provided in the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner prescribed by Lender and on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5 **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged. If the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due  The 30-day period will begin when the notice is given.

Unless the Note provides otherwise, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 18 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6 **Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property damaged, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, and entering on the Property to make repairs  Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

8. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender

Page 2 of 4

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fractions: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument whether or not then due.

Unless the Note provides otherwise, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

10. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceed permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised if the exercise of this option by Lender is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. Borrower's Right to Reinstate. To the extent required by applicable law, Borrower may have the right to have enforcement of this Security Instrument discontinued. Upon reinstatement by Borrower, this Security Instrument and the obligations secured thereby shall remain fully effective as if no acceleration had occurred.

18. Acceleration; Remedies. Except as provided in paragraph 16, if Borrower is in default due to the occurrence of any of the events of default provided in the "DEFAULT; TERMINATION AND ACCELERATION BY LENDER" provision of the Note, Lender shall give Borrower notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured except if this mortgage secures agricultural land, as defined in I.C.A. § 172C.1, then a date not less than 45 days from the date notice is given; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

Page 3 of 4

If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, and costs of title evidence. If this mortgage secures a debt of $20,000 or more and is secured by agricultural land, as defined in I.C.A. § 654A.1 then Lender shall obtain a mediation release under I.C.A. § 654A.11, or have a court determine after notice and hearing that the time delay required for the mediation would cause the person to suffer irreparable harm, before initiating foreclosure proceedings pursuant to Chapter 654 of the Iowa Code. If the tract of real property described herein is less than ten (10) acres in size, it is further hereby agreed, pursuant to Section 628.26 Code of Iowa, that the period of redemption after sale on foreclosure of this mortgage shall be reduced to six (6) months, provided Mortgagee waives in the foreclosure action any rights to a deficiency judgment against the Mortgagors which might arise out of the foreclosure proceeding. If the tract of real property described herein is less than ten (10) acres in size, it is further hereby agreed, pursuant to Section 628.27, Code of Iowa, that the court in a decree of foreclosure may find affirmatively that said tract has been abandoned by the owners and those persons personally liable under this mortgage at the time of such foreclosure, and shall the court so find, and if Mortgagee shall waive any rights to a deficiency judgment against the Mortgagors or their successors in interest in the foreclosure action, then the period of redemption after foreclosure shall be reduced to sixty (60) days

19. Lender in Possession; Assignment of Rents. Upon acceleration under paragraph 18 or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees and premiums on receiver's bonds, and then to the sums secured by this Security Instrument. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" unless Lender shall have entered into and shall remain in actual possession of the Property

20. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs but shall not be required to pay any other charges

21. Advances to Protect Security. This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

### WAIVER OF HOMESTEAD EXEMPTION

I understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my right to this protection for this property with respect to claims based upon this contract.

Dated 05/24/08 .

Borrower RICHARD E. LAND

Borrower SARA L. PORTER-LAND

Witnesses:

JONATHAN CONNER

Borrower RICHARD E. LAND                                    (Seal)

Borrower SARA L. PORTER-LAND                               (Seal)

STATE OF IOWA   LINN                          , County ss

On this 24th day of May , 2008, before me, a Notary Public in and for LINN County, State of Iowa, personally appeared RICHARD E. LAND & SARA L. PORTER-LAND, HUSBAND & WIFE, AS JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON to me known to be the identical PERSON named in and who executed the foregoing instrument and acknowledged that SHE executed the same as HER voluntary act and deed

(Seal)

My Commission expires: JULY 31, 2010

AMY FREIBURG
NOTARIAL SEAL-IOWA
COMMISSION NO.
MY COMMISSION EXPIRES JULY 31, 2010

Notary Public in and for LINN                County, Iowa

Page 4 of 4

IAX254 (03-08-05) HELOC 1st & 2nd Real Estate Mortgage

Report Number: ████████

### Exhibit A

The following described real estate in Linn County, Iowa:

Lot 2, Rockwood Farms First Addition to Linn County, Iowa. Situated in Linn County, Iowa.

Subject to easements, restrictions, and covenants of record, if any.

2008-05-21 09:30 ████████          ████████ Cedar Rapi          P    6/7

BK: 8688 PG:   124
Recorded: 5/30/2013 at 3:06:39.677 PM
Fee Amount: $42.00
Revenue Tax:
Joan McCalmant RECORDER
Linn County, Iowa
Unique Doc ID: ▓▓▓▓▓▓▓

WHEN RECORDED MAIL TO:
SPRINGLEAF FINANCIAL SERVICES, INC.

PO BOX 969
EVANSVILLE, IN 47706-0969



This instrument was prepared by HEATHER HART   PO Box 969 Evansville, IN 47706

_____ [Space above This Line for Recording Data] ▓▓▓▓▓▓▓▓▓

## LOAN MODIFICATION AGREEMENT
### (For Modifying Non Recourse Home Equity Line of Credit Accounts)

| Security Instrument Filing Data | |
|---|---|
| Instrument Dated | MAY 24, 2008 |
| Recorded on | MAY 27, 2008 |
| Office Recorded in | REGISTER OF DEEDS |
| County | LINN COUNTY |
| Location | CEDAR RAPIDS, IA 52405 |
| Book/Volume/Liber | 6992 |
| Page | 357 |
| File | |
| Doc/Instrument Number | ▓▓▓▓▓▓▓5    Parcel# ▓▓▓▓▓▓▓▓▓ |

This Loan Modification Agreement ("Agreement"), effective on 02/01/13 (the "Modification Effective Date") by and between _____
RICHARD E LAND & SARA L PORTER-LAND, HUSBAND & WIFE, AS JOINT
TENANTS WITH FULL RIGHTS OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON
("Borrower") and SPRINGLEAF FINANCIAL SERVICES, INC.
_____ ("Lender"), modifies, amends, and supplements (to the extent this Agreement is inconsistent with their terms): (1) the Mortgage, Deed of Trust, Deed to Secure Debt, or Security Deed ("Security Instrument"), as set forth herein above, and (2) the Home Equity Line of Credit Agreement ("Note"), dated MAY 24, 2008 , which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at:

1217 STONEY POINT RD NW        CEDAR RAPIDS

| Co# ▓▓▓▓▓ | | MLO# |
|---|---|---|

▓▓▓▓▓▓ HELOC Modification Agreement

✗ Legal Description on Page # 8

Page 1 of 8
8

┌─────────────┐
│  EXHIBIT    │
│   B1        │
└─────────────┘

If this Agreement is to be recorded, the real property described is set forth as follows:

SEE ATTACHED EXHIBIT A

PARCEL# ██████████

This Agreement also supersedes and replaces any prior loan modification agreement(s) between Lender and Borrower as of the effective date of this Agreement.

Terms not defined in this Agreement are as defined in the Note and/or Security Agreement.

As of the Modification Effective Date, the amount of the principal balance payable under the Note and the Security Instrument (the "Unpaid Principal Balance") will be $ 150878.87 . In consideration of the mutual promises and agreements contained herein, Borrower and Lender (together the "Parties") agree that beginning on the Modification Effective Date, and after both Parties have executed this Agreement, (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. **ANNUAL PERCENTAGE RATE.** Borrower promises to pay the Principal Balance, plus interest, to the order of Lender. $ 0.00 of the Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 150878.87 . The unpaid and deferred interest that has not been capitalized (the "Deferred Interest") will be $ 0.00 . Interest at the Annual Percentage Rate of 2.03 % will begin to accrue on the Interest Bearing Principal Balance as of 01/01/13 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 02/01/13 . Assuming no additional sums are advanced under the Note and assuming that all minimum monthly payments are made in full and on time, my payment schedule, including my minimum monthly payments and APR based on the current principal balance, will be:

| Months | Interest Rate | Interest Rate Change Date | Monthly Payment | Estimated Monthly Escrow Payment* | Total Monthly Payment* (If escrowed) | Payment Begins On |
|---|---|---|---|---|---|---|
| 001 – 036 037 – 480 | 2.03 8.49 | 01/01/13 01/01/16 | 459.28 1060.27 | 441.11 <br> May adjust periodically <br> May adjust periodically <br> May adjust periodically | 900.39 <br> May adjust periodically <br> May adjust periodically <br> May adjust periodically | 02/01/13 02/01/16 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

Minimum monthly payments will be paid until Principal Balance and accrued interest are paid in full.

2. **Repayment Term.** The assumed repayment term of the Note (and Security Instrument) is 480 months from the date of the Agreement.

3. Minimum monthly payments will continue to be calculated in the manner set forth in the Note. Borrower must pay the minimum monthly payment shown on each monthly statement by the payment due date.

██████████ HELOC Modification Agreement

4. **Place of Payment.** Borrower must continue to make the monthly payments in the manner and at such place as Lender may require.

5. **Funds for Escrow Items.** Borrower and Lender expressly covenant and agree, that until all indebtedness owing on said Note and Security Instrument (Hereinafter referred to as "Loan Documents") or any renewal thereof is paid, Borrower will keep all Required Insurance premiums, taxes, governmental assessments, levies, and charges against said premises that could encumber said Real Estate paid as they become due. Borrower's failure to keep such Insurance coverage, taxes and charges current, as described in the preceding sentence, may result, at Lender's option, without waiving any of its other rights or remedies and after giving any notice required by law, in Lender paying such Insurance, taxes or charges, and the amount so paid, with interest thereon at the rate described in said Loan Documents; will be and become a part of the indebtedness secured by this Agreement. Lender may elect, the law may require, or Borrower may request that Lender maintain an escrow fund for payment of real estate taxes, assessments, insurance premiums, or other obligations that might encumber the Real Estate if not timely paid when due. If so elected, if required by law, or if Borrower's request is granted, Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the property that secures Borrower's Note ("Property"); (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount and interest as allowed by law. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying

the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA but generally in no more than 12 monthly payments, but Lender may in its sole discretion allow Borrower to make up the initial shortage at the time of the execution of this Agreement in no more than 60 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but generally in no more than 12 monthly payments, but Lender may in its sole discretion allow Borrower to make up the initial deficiency at the time of the execution of this Agreement in no more than 60 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

6.  Application of Payments. All payments will be applied in the following order:
    first to any __Other Charges_____, then to any __Late Charges_____,
    then to any __Credit Insurance Premiums__, then to any __Escrow Items_____,
    then to any __Finance Charges_____, and finally, to any __Principal Balance__.

7.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

8.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions of the Note and Security Instrument are forever canceled, null and void, as of the date of this Agreement:

    (a)     All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)     All terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

▆▆▆▆▆▆▆▆ HELOC Modification Agreement                                Page 4 of 8

9. Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e)    ☐ If checked, I was discharged in a bankruptcy proceeding subsequent to the execution of the Note and Security Instrument. Based on this representation, notwithstanding anything to the contrary in the Agreement, Lender agrees that I will not have personal liability on the Note and Security Instrument pursuant to this Agreement.

(f)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

This Agreement modifies the Note and Security Instrument referenced above as expressly provided herein. Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

In Witness Whereof, Lender and Borrower have executed this Agreement.

**Springleaf Financial Services**                          _____ (Seal)
_____                                Borrower
Name of Lender                                           RICHARD E LAND

                                                         _____ (Seal)
By: _____                            Borrower
      Jeff Schutte                                       SARA L PORTER-LAND

_____  12-26-12    _____ (Seal)
Witness Signature            Date       Witness Signature           Date

HELOC Modification Agreement                             Page 5 of 8

STATE OF IOWA _____ Linn _____, County ss:

On this _8L_ day of _December_, _2012_, before me, a Notary Public in and for
_____Linn_____ County, State of Iowa, personally appeared
_Sara L Porter-Land and Richard E Land_____
_____ to me known to be the identical
_____ named in and who executed the foregoing instrument and acknowledged that _they_ executed the same as
_a_ voluntary act and deed.

(Seal)

| Acknowledging |
| Officer |
| Sign Here |

→ _Delaina Schernbeck_

Notary Public in and for _____Linn_____ County, Iowa.

My Commission expires: _4-22-2014_____.

DELAINA SCHERNBECK
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 734135
MY COMMISSION EXPIRES 4-22-2014

Page 6 of 8

STATE OF INDIANA, COUNTY OF __VANDERBURGH_____ ss:

Before me, ___VALERIE E. WILLIAMS_____, a Notary Public in and for said County
and State, hereby certify that ___JEFF SCHUTTE_____

whose name is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me on this day that, being informed of the contents of the conveyance, he/she/they executed
the same voluntarily on the day the same bears date.

WITNESS my hand and official seal in the county and state aforesaid this __6th__ day of
February____ 2013__.

(SEAL)

My Commission expires:
MAY 24, 2020_____

Notary Public
VALERIE E. WILLIAMS
VANDERBURGH COUNTY, STATE OF INDIANA

Page 7 of 8

Modification Notary

Exhibit A

The following described real estate in Linn County, Iowa:

Lot 2, Rockwood Farms First Addition to Linn County, Iowa. Situated in Linn County, Iowa.

Subject to easements, restrictions, and covenants of record, if any.

BK: 10597 PG:  555
Recorded: 3/26/2020 at 3:41:41.0 PM
County Recording Fee: $7.00
Iowa E-Filing Fee: $3.00
Combined Fee: $10.00
Revenue Tax:
Joan McCalmant RECORDER
Linn County, Iowa
Unique Doc ID: ▌

Document Prepared by: Bill Koch, Select Portfolio Servicing, Inc., 3217 S. DECKER LAKE DRIVE, SALT LAKE
CITY, UT, 84119, ▌
When Recorded Mail To: Jeff Prose, Richmond Monroe Group, 82 Jim Linegar Ln, Branson West, MO, 65737, ▌

## CORPORATE ASSIGNMENT OF MORTGAGE

TS Ref # ▌
IA/LINN

Assignment Prepared on: January 31, 2020

Assignor: ONEMAIN FINANCIAL GROUP, LLC, SUCCESSOR BY MERGER TO ONEMAIN FINANCIAL OF
AMERICA, INC., F/K/A SPRINGLEAF FINANCIAL SERVICES OF AMERICA, INC., F/K/A AMERICAN
GENERAL FINANCIAL SERVICES OF AMERICA, INC., AND AMERICAN GENERAL FINANCIAL SERVICES,
INC., BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, at C/O SELECT PORTFOLIO
SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Assignee: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR THE HOLDERS OF
THE CIM TRUST 2017-1, MORTGAGE-BACKED NOTES, SERIES 2017-1 , at C/O SELECT PORTFOLIO
SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named
Assignee all interest under that certain Mortgage dated 5/24/2008, in the amount of $142,517.00, executed by
RICHARD E. LAND & SARA L. PORTER-LAND, HUSBAND & WIFE, AS JOINT TENANTS WITH FULL RIGHTS
OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON to AMERICAN GENERAL FINANCIAL SERVICES,
INC. and Recorded: 5/27/2008, Instrument #: 200800083718, Book: 6992, Page: 357 in LINN County, State of Iowa.

Property Address: 1217 STONEY POINT RD NW, CEDAR RAPIDS, IA, 52405

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the above-described Mortgage.

ONEMAIN FINANCIAL OF AMERICA, INC. FKA SPRINGLEAF FINANCIAL SERVICES OF AMERICA, INC. FKA
AMERICAN GENERAL FINANCIAL SERVICES, INC., BY SELECT PORTFOLIO SERVICING, INC., ITS
ATTORNEY IN FACT

On: FEB 1 9 2020                    POA TO BE RECORDED
                                   CONCURRENTLY

By: _____
Name: Mailorie Savage
Title: Document Control Officer

State of UTAH
County of SALT LAKE

On FEB 1 9 2020 _____, before me, _____Molina Fresquez_____, a Notary Public in
and for SALT LAKE in the State of UTAH, personally appeared __Mailorie Savage__
__Doc Control Officer__, ONEMAIN FINANCIAL OF AMERICA, INC. FKA SPRINGLEAF FINANCIAL
SERVICES OF AMERICA, INC. FKA AMERICAN GENERAL FINANCIAL SERVICES, INC., BY SELECT
PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their
signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____
Molina Fresquez
Notary Expires: JAN 2 8 2023 / #:    704224'

MOLINA FRESQUEZ
Notary Public  State of Utah
My Commission Expires on:
January 28, 2023
Comm. Number: 704224

IA/LINN

┌─────────────────┐
│    EXHIBIT       │
│                  │
│       C          │
│                  │
└─────────────────┘

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

RICHARD E. LAND AND SARA L. PORTER
LAND FDBA THIS N THAT TO GO;

                                    Debtor(s).

BANKRUPTCY NO. 19-01485

CORPORATE STATEMENT

STATEMENT REGARDING OWNERSHIP OF
U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR THE
HOLDERS OF THE CIM TRUST 2017-1, MORTGAGE-BACKED NOTES, SERIES 2017-1

☑     The following entities directly or indirectly own 10% or more of any class of the
corporation's equity interest:

Name:         Kendall Proeun
Address:      3217 So. Decker Lake Dr.
              Salt Lake City, UT 84119

Name:         NA
Address:      NA

Name:         NA
Address:      NA

(For additional names, attach an addendum to this form)

☑     There are no entities that directly or indirectly own 10% or more of any class of the
corporation's equity interest.

The undersigned is the:
☒     Creditor
☐     Plaintiff
☐     Defendant

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _October 10th, 2021_          _Kendall Proeun_
                                     Signature of Authorized
                                     Individual for Corporate Party

                                     _Kendall Proeun_
                                     Print Name
                                              Kendall Proeun
                                              Document Control Officer
                                     _____ Select Portfolio Servicing, Inc.
                                     Title

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:

RICHARD E. LAND AND SARA L. PORTER
LAND FDBA THIS N THAT TO GO;

Debtor(s).

BANKRUPTCY NO. 19-01485

DECLARATION IN SUPPORT OF
MOTION FOR RELIEF FROM
AUTOMATIC STAY

I, _____ Kendall Proaun _____, declare under perjury as follows:

1.      I am a Document Control Officer of Select Portfolio Servicing, Inc. ("SPS") and

am authorized to sign this declaration on behalf of SPS as servicing agent for U.S. Bank National

Association, as indenture trustee, for the holders of the CIM Trust 2017-1, Mortgage-Backed

Notes, Series 2017-1, which is the entity that has the right to foreclose by virtue of being owner

and holder of the note. This declaration is provided in support of the Motion for Relief from Stay

(the "Motion").

2.      As a mortgage servicer, SPS collects payments from borrowers and maintains up-

to-date records concerning the loans it services in its electronic record-keeping system. SPS is a

business and maintains the loan records in the course of its regularly conducted business

activities and the records are made at or near the time of the event by or from information

transmitted by a person with personal knowledge of the event. It is SPS's regular practice to keep

such records in the ordinary course of a regularly conducted business activity.

3.      I have access to SPS's business records, including the business records for and

relating to the loan that is the subject of this action. I sign this declaration based upon my review

of those records relating to the loan and from my own personal knowledge of how SPS's

business records are kept and maintained.

4.      To the extent that the business records of the loan in this matter were created by a prior servicer, the prior servicer's records for the loan were integrated and boarded into SPS's systems, such that the prior servicer's records concerning the loan are now part of SPS's business records. SPS conducts quality control and verification as part of the boarding process to ensure the accuracy of the boarded records. It is the regular practice of SPS to integrate prior servicers' records into SPS's business records, and to rely upon the accuracy of those boarded records in providing its loan servicing functions. These prior servicer records are integrated and relied upon by SPS as part of SPS's business records.

5.      The Debtor(s), Richard E. Land and Sara L. Land, executed that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain security instrument referenced in the Motion ("Security Instrument"), all obligations of the Debtor(s) under and with respect to the Note and the Security Instrument are secured by the property referenced in the Motion.

6.      The Creditor, directly or through an agent, has possession of the Note, which is either made payable to the Creditor or has been duly endorsed.

7.      As of September 29, 2021, the unpaid principal balance of the Note is $137,490.10.

8.      As of September 29, 2021, there are one or more defaults in paying post-petition amounts due, pursuant to the terms of the Note, as set forth in the chart below:

| Number of Missed Payments | From | To | Principal and Interest | Escrow (if applicable) | Monthly Payment Amount | Total Amounts |
|---|---|---|---|---|---|---|
| 5 | 5/1/2021 | 9/1/2021 | $1,060.27 | $266.09 | $1,326.36 | $6,631.80 |
| | | | | | | |
| Less post-petition partial payments (suspense balance): | | | | | | ($891.44) |

Total:  $5,740.36

As of the date listed in this paragraph, the total post-petition arrearage/delinquency is

$5,740.36. This is the amount necessary to cure any post-petition default on or about the

date hereof.

9. The next payment under the terms of the Note will come due on October 1, 2021 and is in

the amount of $1,400.53.

10.    Attached as Exhibit "1" is a post-petition payment history.

11.    The current status of any pending loss mitigation evaluations is as follows:

Modification Programs          Pending NA  Not pending  ✓
Short Sale                     Pending NA  Not pending  ✓
Deed in Lieu of Foreclosure    Pending NA  Not pending  ✓
Relocation Assistance          Pending NA  Not pending  ✓

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true
and correct.

Executed this 6th day of October, 2021.

By: Kendall Proeun
Name:     Kendall Proeun
Title:     Document Control Officer
Select Portfolio Servicing, Inc.

Date: October 6th, 2021

# Exhibit 1

# Exhibit 1



Loan Number: ■■■
Preparation Date:09/29/2021
Prepared By: JessicaMart

### MFR Post-Petition Payment History for Filing

| | |
|---|---|
| Loan Number | ■■■ |
| Debtors Name - 1 | ■■■ |
| Debtors Name - 2 | ■■■ |
| Property Address | ■■■ |
| Property State | ■■■ |

| | |
|---|---|
| Bankruptcy Case # | ■■■ |
| Filing Date | ■■■ |
| Person filing | ■■■ |
| Number of previous filings | ■■■ |

| | |
|---|---|
| Post petition due date | ■■■ |
| Post petition amount due | ■■■ |
| Escrow Shortage | ■■■ |
| Suspense | ■■■ |
| Total Post petition due | ■■■ |

| | | | | |
|---|---|---|---|---|
| 11/06/2019 | 11/01/2019 | $1,333.94 | $1,381.99 | |
| 12/27/2019 | Partial Payment | $0.00 | $1,000.00 | Partial Payment |
| 01/07/2020 | 12/01/2019 | $1,333.94 | $1,000.00 | |
| 02/12/2020 | Partial Payment | $0.00 | $600.00 | Partial Payment |
| 02/20/2020 | 01/01/2020 | $1,333.94 | $450.00 | |
| 03/10/2020 | 02/01/2020 | $1,333.94 | $1,000.00 | |
| 04/14/2020 | 03/01/2020 | $1,333.94 | $1,300.00 | |
| 04/21/2020 | Partial Payment | $0.00 | $271.65 | Partial Payment |
| 05/04/2020 | Partial Payment | $0.00 | $800.00 | Partial Payment |
| 06/05/2020 | 04/01/2020 | $1,333.94 | $1,000.00 | |
| 07/15/2020 | 05/01/2020 | $1,333.94 | $1,100.00 | |
| 08/14/2020 | 06/01/2020 | $1,333.94 | $767.88 | |
| 09/22/2020 | 07/01/2020 | $1,333.94 | $2,000.00 | |
| 10/07/2020 | 08/01/2020 | $1,333.94 | $1,333.94 | |
| 11/09/2020 | 09/01/2020 | $1,333.94 | $1,400.00 | |
| 12/16/2020 | 10/01/2020 | $1,333.94 | $620.00 | |
| 01/12/2021 | 11/01/2020 | $1,333.94 | $1,400.00 | |
| 01/29/2021 | Partial Payment | $0.00 | $200.00 | Partial Payment |
| 02/10/2021 | 12/01/2020 | $1,326.36 | $1,333.94 | |
| 02/10/2021 | Partial Payment | $0.00 | $0.06 | Partial Payment |
| 03/11/2021 | Partial Payment | $0.00 | $800.00 | Partial Payment |
| 03/18/2021 | 01/01/2021 | $1,326.36 | $600.00 | |
| 04/08/2021 | 02/01/2021 | $1,326.36 | $1,000.00 | |
| 04/20/2021 | Partial Payment | $0.00 | $500.00 | Partial Payment |
| 05/18/2021 | Partial Payment | $0.00 | $200.00 | Partial Payment |
| 06/22/2021 | 03/01/2021 | $1,326.36 | $605.00 | |
| 07/26/2021 | Partial Payment | $0.00 | $600.00 | Partial Payment |
| 08/16/2021 | 04/01/2021 | $1,326.36 | $800.00 | |
| 09/15/2021 | Partial Payment | $0.00 | $800.00 | Partial Payment |
| Due | 05/01/2021 | $1,326.36 | $0.00 | |





Loan Number:
Preparation Date:09/29/2021
Prepared By: JessicaMart

| Due | 06/01/2021 | $1,326.36 | $0.00 | |
| Due | 07/01/2021 | $1,326.36 | $0.00 | |
| Due | 08/01/2021 | $1,326.36 | $0.00 | |
| Due | 09/01/2021 | $1,326.36 | $0.00 | |
| Total Due | | $30,604.82 | | Total Pmts Due |
| Total Received | | | $24,864.46 | $6,631.80 |